# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, *on behalf of its members*, and SCOTT SMITH, | Civil No. 15-3649 (JRT/SER) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| RODNEY BILLMAN, *as Co-Trustee*, | |
| Defendant. | |

Paul R. Hansmeier, **CLASS JUSTICE PLLC**, 100 Fifth Street, Suite 1900, Minneapolis, MN 55402, for plaintiffs.

Christopher T. Kalla, **HANSBERY & TURNER, PA**, 33 South Sixth Street, Suite 4160, Minneapolis, MN 55402, for defendant.

In this case, Plaintiffs Scott Smith and the Disability Support Alliance ("DSA") (together "plaintiffs") allege that Defendant Rodney Billman violated and is violating the federal Americans with Disabilities Act ("ADA") and its Minnesota state law analogue, the Minnesota Human Rights Act ("MHRA"). Smith alleges that he visited one of Billman's rental properties and witnessed and suffered from several violations. Plaintiffs filed this action in state court, attempted service on Billman at a California property, and Billman removed to federal court.

Now before the Court is Billman's motion to dismiss for insufficient service and failure to state a claim. The Court finds that plaintiffs have met their burden of showing

that service was sufficient, at least for purposes of this motion to dismiss, and that on the facts alleged, plaintiffs each have standing to pursue their claims for relief under Counts I and II in the complaint. However, the Court also finds that plaintiffs have not pleaded a valid claim for relief under Count III because the complaint contains no facts pertaining to Billman's state of mind. The Court will therefore grant Billman's motion with respect to Count III and deny it for Counts I and II.

## BACKGROUND

### I.   FACTUAL BACKGROUND

Scott Smith is a resident of Marshall, Minnesota. (Notice of Removal to Federal Ct., Attach. 1 ("Compl.") ¶ 9, Sept. 11, 2015, Docket No. 1.) Smith uses a wheelchair because he suffers from arthrogryposis, a "rare and disabling congenital joint contracture" that causes Smith "muscle weakness and an inability to stand or walk." (*Id.* ¶ 10.) Smith puts his wheelchair in a "car-top wheelchair carrier" when he drives a car. (*Id.* ¶ 15.) The carrier is "impossible to operate with a vehicle parked in the adjacent parking space." (*Id.*) Thus, according to plaintiffs, it is "dangerous" for Smith to park in a parking space without an "access aisle." (*Id.*)

Smith's co-plaintiff, DSA, is a Minnesota nonprofit corporation whose purpose is to "eliminate discrimination on the basis of disability" and to "promote the betterment of the lives of those living with disabilities." (*Id.* ¶ 8.) Smith is a member of DSA. (*Id.* ¶ 9)

Rodney Billman is co-trustee of Billman Rentals and owns a commercial shopping center located at 151 Silver Lake Road in New Brighton, Minnesota. (*Id.* ¶ 11.)

Plaintiffs state that the shopping center contains a number of businesses, including a tanning salon, driving school, used computer shop, pet hospital, and two law offices. (*Id.* ¶ 12.)

According to plaintiffs, Smith visited Billman's New Brighton shopping center in April 2015. (*Id.*) Smith reported that "[d]espite having over one hundred eighty parking spaces," the shopping center "had only one parking space designated and reserved as accessible parking spaces through paint and signage." (*Id.* ¶ 14.) Smith also reported that one of the entrances to the shopping center was not accessible because a person seeking to enter was required to climb two stairs, each approximately eight inches in height, and there were no signs posted at the entrance giving direction to an alternative accessible entrance. (*Id.* ¶ 16.) Smith "attempted to access [the shopping center's] premises, but could not do so independently . . . because of his disabilities, due to the physical barriers to access and violations of the ADA and MHRA that exist at . . . [the] premises." (*Id.* ¶ 18.)

## II.  PROCEDURAL BACKGROUND

On July 27, 2015, plaintiffs together filed a complaint in Ramsey County District Court in Minnesota. The complaint contained three counts: Count I alleged Billman violated the ADA. (*Id.* ¶¶ 38, 39 (citing 42 U.S.C. § 12182, prohibiting "discrimination by public accommodations").) Count II alleged Billman violated the MHRA's prohibition on "unfair discriminatory practices" in public accommodations. (*Id.* ¶¶ 47-49 (citing Minn. Stat. § 363A.11).) And Count III alleged that Billman's violation of the

MHRA constituted a "bias offense" under Minn. Stat. § 611A.79. (*Id.* ¶¶ 55-58.) For Counts I and II, plaintiffs requested a declaratory judgment, a permanent injunction, and costs and attorney's fees. (*Id.* at 14-15, ¶¶ a, b, e.) For Counts II and III, plaintiffs also requested a civil penalty and damages. (*Id.* at 15, ¶¶ c, d.)

Plaintiffs hired a process server company to serve Billman and on August 13 a process server visited a property located at 956 Knollwood Drive, Newbury Park, California. (Decl. of Paul Hansmeier ("Hansmeier Decl."), Exs. A, C, Oct. 9, 2015, Docket No. 14.) Billman's son-in-law, Matt Bisenius, who is over 18 years of age and is competent, answered the door at the property and the process server left service documents with him. (*Id.*, Ex. A.)

In September, Billman removed the case to federal court and filed the motion now before the Court, requesting that the Court dismiss all plaintiffs' claims pursuant to Rule 12(b)(5) and (6). In support of his motion, Billman filed an affidavit with his reply brief stating that he does not now "reside" at the 956 Knollwood property and did not "reside" there on the date Bisenius was served with Billman's service papers. (Aff. of Rodney Billman ("Billman Aff."), Oct. 23, 2015, Docket No. 17.) Bisenius also filed affidavits asserting that while he "reside[s]" at 956 Knollwood, Billman neither "reside[s]" nor "live[s]" there. (Second Aff. of Matt Bisenius, Oct. 23, 2015, Docket No. 16; *see also* Aff. of Matt Bisenius, Sept. 18, 2015, Docket No. 8.) Neither Billman's briefs nor his exhibits affirmatively state where he lives, resides, or spends his nights.

In opposing Billman's motion, plaintiffs submitted several relevant exhibits, including (i) a copy of a 2015 Ramsey County property tax statement addressed to

"RODNEY W BILLMAN CO TRUSTEE, 956 KNOLLWOOD DR, THOUSAND OAKS CA 91320-5303," (Hansmeier Decl., Ex. C); (ii) an email from the service-of-process company stating that Bisenius told the process server that Billman "owns the property" and that Bisenius "works for [Billman] and sees him every day," but also that Billman "does not live at the residence," (*Id.*, Ex. B); and (iii) a screenshot of the Billman Rentals website, stating that Billman "resides" in California and that Billman Rentals is "primarily ran by [Billman's] daughter . . . and son-in-law Matt," (*id.*, Ex. D ("Billman Rentals Website Screenshot") at 1).

The day before the Court heard argument on the motion, Smith filed a declaration stating that he had returned to the New Brighton shopping center and once again observed various violations of state and federal disability-accommodations laws. (Decl. of Scott Smith, Nov. 30, 2015, Docket No. 19.)

## ANALYSIS

**I.    12(b)(5):  INSUFFICIENT SERVICE OF PROCESS**

**A.    Standard of Review**

Billman argues that plaintiffs' attempted service was ineffective.  Federal Rule of Civil Procedure 12(b)(5) allows a party to move to dismiss a complaint for insufficient service of process.  The standard of review for a 12(b)(5) motion to dismiss is the same as that used for a 12(b)(2) motion to dismiss for lack of personal jurisdiction.  *Kammona v. Onteco Corp.*, 587 F. App'x 575, 577-78 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2316

(2015).[1]  Therefore, to survive a motion to dismiss for insufficient service, "a plaintiff must plead sufficient facts to support a reasonable inference that the defendant" has been properly served.  *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (internal quotation mark omitted) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)).  The plaintiff bears the burden of proof on the issue of service, and at trial or an evidentiary hearing the plaintiff must establish by a preponderance of the evidence that service was proper.  *Id.*  In the context of a 12(b)(5) motion to dismiss, the parties may submit affidavits and evidence "to bolster their positions," but if they do, the "motion is in substance one for summary judgment." *Id.*  And "[a]t the motion stage, the action should not be dismissed for lack of [proper service] if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that" service was proper.  *Id.*

   B.   **Plaintiffs' Attempted Service**

When a state-court case is removed to federal court and the state-court service is challenged, the federal court must determine the sufficiency of service based on the law of the jurisdiction in which the action was filed – in this case, Minnesota.  *Norsyn, Inv. v. R.M. Desai*, 351 F.3d 825, 829 (8th Cir. 2003).  Minnesota law provides that service upon

---

[1] *See also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (per curiam) (noting that proper service of process is one of the components of personal jurisdiction); *Hubbard v. Citi Mortg., Inc.*, No. 13-2189, 2014 WL 1309112, at *4 (D. Minn. Mar. 31, 2014) ("Proper service is essential for a court to exercise jurisdiction over a party.").

an individual can be effected either "by delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03(a).

The parties in this case agree that plaintiffs did not deliver a copy of the service documents to Billman personally. Instead, their dispute centers on whether the 956 Knollwood property is Billman's "usual place of abode," and thus whether substituted service was proper. For more than a century, Minnesota courts have interpreted the term "usual place of abode" to mean "the place where the defendant is usually to be found," which is not necessarily the same place as a person's "residence." *Berryhill v. Sepp*, 106 Minn. 458, 459 (1909). A number of courts have found that a person may have more than one usual place of abode. *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257-58 (2d Cir. 1991) (collecting cases from state and federal courts and holding that substituted service was proper at a New York apartment that was not the defendant's place of residence); *see also Larson v. Hendrickson*, 394 N.W.2d 524, 525-26 (Minn. Ct. App. 1986) (holding that defendant's Minnesota property was a usual place of abode even though defendant had moved to Florida with an intention to therein reside).

Here, although the Court has very little evidence before it, plaintiffs appear to have met their burden. Plaintiffs have presented probative evidence in a 2015 Ramsey County property tax statement addressed to Billman at 956 Knollwood Drive and a screenshot of Billman's own website stating that he "resides" in California. Ramsey County's property tax website states, "If you move or change your address, you must notify us of this change." *See Property Tax Statement Overview*, Ramsey County,

http://www.co.ramsey.mn.us/prr/Statement_Overview.htm (last visited Dec. 9, 2015). The fact that the 2015 property tax statement, issued within the last calendar year, lists 956 Knollwood as Billman's mailing address suggests that 956 Knollwood was Billman's mailing address at least recently if not now. For many individuals, of course, a mailing address is the same as a "usual place of abode." Thus, the property tax statement and the screenshot of the website together create a reasonable inference that 956 Knollwood is Billman's usual place of abode.

Billman's only evidence to the contrary is Billman's own declaration that he does not "reside" at 956 Knollwood, and his son-in-law's statements that Billman does not "reside" or "live" there. Billman has made no affirmative statement as to where he does live, reside, or spend his nights. He has provided none of his personal history with the property (although his son-in-law reportedly told the process server that Billman owned the property).

In light of this limited evidence and the standard of review, the Court finds that Billman's barebones assertion that he does not "reside" at 956 Knollwood is not enough to overcome the evidence presented by plaintiffs. The Court need not decide now whether service was in fact proper, or whether plaintiffs will be able to show at trial or an evidentiary hearing that service was proper. Instead, it is enough for purposes of this Rule 12(b)(5) motion to dismiss that the evidence before the Court now, when viewed in

the light most favorable to plaintiff, suggests that service was effected. Therefore, the Court finds no basis for granting Billman's motion on these grounds.[2]

## II.     12(b)(6):  FAILURE TO STATE A CLAIM

### A.     Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

---

[2] Plaintiffs argued in the alternative that their attempted substitute service was sufficient because Billman had actual notice of the complaint and that plaintiffs substantially complied with the state rules, and also because Billman waived his right to object on service grounds when he filed his notice of removal with the Court.  The Court finds it unnecessary to decide these questions because plaintiffs have presented evidence sufficient to showing that service was effective, at least for purposes of a 12(b)(5) motion to dismiss.

and plausibility," and therefore must be dismissed. *Id.* Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

### B. Standing

Even if service was effective, Billman argues that the Court should grant the motion because Smith and DSA lack standing. Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To qualify as a party with standing to litigate, a party must show "first and foremost" an injury "in the form of 'invasion of a legally protected interest'" that is "concrete and particularized" and "actual or imminent"; the injury must also be "fairly traceable to the challenged action" and "redressable by a favorable ruling." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015); *see also Hammer v. Sam's East, Inc.*, 754 F.3d 492, 497 (8th Cir. 2014) (labeling the elements of standing "injury," "causation," and "redressability").

The redressability element of standing requires a plaintiff who requests retrospective relief to demonstrate that they have already suffered an injury, and a plaintiff that requests prospective relief to show that he is "immediately in danger of sustaining some direct injury" in the future and that the threat of injury is "real and

immediate" and not "conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Just because a plaintiff has standing to request one form of relief does not mean that she has standing for all forms of relief. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("Because respondent alleges only past infractions of [law], and not a continuing . . . or . . . future violation, injunctive relief will not redress its injury."); *Lyons*, 461 U.S. at 112-13 (noting that although Lyons "may have been illegally choked" once and therefore may have "standing to claim damages," the allegation of a past injury "does nothing to establish a real and immediate threat" of future choking).

### 1. Smith's Standing

Smith has requested retrospective relief (damages) and prospective relief (an injunction). To survive Billman's motion to dismiss in the entirety, he must therefore have pleaded that he already suffered an injury, and that he will suffer one again in the near future.

With regard to past injuries, Smith makes clear that he "attempted to access [the shopping center's] premises, but could not do so independently . . . because of his disabilities, due to the physical barriers to access and violations of the ADA and MHRA that exist at . . . [the] premises." (Compl. ¶ 18.) This statement is sufficient to show that Smith has already suffered an injury for pleading purposes.[3]

---

[3] Plaintiffs make an additional argument that the actual-injury requirement of standing may be satisfied solely by the invasion of a legal right created by Congress. For this proposition

(Footnote continued on next page.)

The question of a future imminent injury is more complex, but Smith has again pleaded what is necessary. In the context of the ADA, courts often look to four factors to determine whether a plaintiff faces an imminent future injury: (1) the plaintiff's proximity to the accommodation; (2) the frequency of the plaintiff's travel near the accommodation; (3) the plaintiff's past patronage of the accommodation; and (4) the definiteness of plaintiff's plans to return. *See, e.g.*, *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1112 (D. Minn. 2014) (applying the four factors); *Steelman v. Rib Crib No. 18*, No. 11-3433, 2012 WL 4026686, at *2 (W.D. Mo. Sept. 12, 2012) (same); *Miller v. Ataractic Inv. Co.*, No. 11-3509, 2012 WL 2862883, at *3 (W.D. Mo. July 11, 2012) (same). The Court recognizes that controlling authority does not require the Court to apply these factors, but they are nonetheless persuasive and the Court will review them.

For the first factor – proximity – a number of courts have found that a distance of over 100 miles weighs against a plaintiff's likelihood of imminently suffering an ADA violation. *See Steelman*, 2012 WL 4026686, at *3 (collecting cases). Smith lives approximately 160 miles from the shopping center. Therefore, this factor favors Billman.

---

(Footnote continued.)

plaintiffs cite *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014), and *Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013). The Court finds it unnecessary to decide whether this argument has merit on these facts because Smith has pleaded a past personal injury independent of the rule espoused in *Charvat* and *Hammer*. Nonetheless, the Court notes that a related question is currently before the Supreme Court in the case *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. argued Nov. 2, 2015).

The second and third factors also favor Billman because plaintiffs pleaded no facts suggesting Smith regularly visits or has ever visited the shopping center prior to the visit at issue in this litigation.

But on the fourth factor, plaintiffs have pleaded a sufficiently definite intent to return: Smith intends to "return and patronize" Billman's shopping mall "when [he] learn[s] that the premises have been made fully accessible to persons who use wheelchairs for mobility." (Compl. ¶ 17.)[4]

Billman suggests that Smith's alleged intention to return is insufficient because it is akin to the plaintiffs' insufficiently clear intent to return in *Lujan v. Defenders of Wildlife*. 504 U.S. 555, 563-64 (1992). Billman's *Lujan* analogy misses the mark, though, for two reasons. First, Smith's allegation that he will return is more specific than the plaintiffs' allegations in *Lujan*. Here, Smith states that he will return on the happening of an event – Billman's fixing of the alleged ADA violations. But in *Lujan*, by comparison, the plaintiffs asserted nothing more than a bare "inten[tion] to return": they lacked any "plans" to return and they affirmatively stated that their return would happen "[n]ot next year," just "[i]n the future." *Id.* Unlike Smith, the *Lujan* plaintiffs did not link their return to an event. Second, the Supreme Court decided *Lujan* in an appeal

---

[4] After the parties filed their briefs, Smith submitted an affidavit stating that in November 2015 he returned to the shopping center and observed that Billman had not yet corrected the alleged violations. (Decl. of Scott Smith ¶¶ 2-6, Nov. 30 2015, Docket No. 19.) Smith attached eight photographs documenting his visit and the alleged violations. (*Id.*, Exs. A-H.) The Court however may not consider these new facts for purposes of the Rule 12(b)(6) motion to dismiss because "jurisdiction is to be assessed under the facts existing when the complaint is filed." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992).

from summary judgment, whereas the Court here is asked to decide only a motion to dismiss. As the Supreme Court has recognized, although "a plaintiff must 'set forth' . . . '**specific** facts' to survive a motion for summary judgment," *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting Fed. R. Civ. P. 56(e) as then styled) (emphasis added), somewhat less is required of a plaintiff on a motion to dismiss: "[at] the pleading stage, **general** factual allegations of injury resulting from the defendant's conduct may suffice," *id.* (emphasis added) (quoting *Lujan*, 504 U.S. at 561)); *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 553 (8th Cir. 2015) (quoting *Lujan*, 504 U.S. at 561). If Smith's alleged imminent injury is as speculative as Billman believes it to be, Billman will have a subsequent opportunity to demonstrate as much, should litigation progress. But for the time being, Smith's assertion that he will visit the shopping mall when Billman makes it accessible is enough.[5]

In sum, plaintiffs have pleaded sufficiently definite facts to show that it is plausible that Smith will return to the shopping center and suffer an injury.

---

[5] The parties dispute whether serial ADA litigants are more or less likely to return to a site of alleged ADA infractions. Each party cites non-controlling cases to support their respective positions. *Compare, e.g.*, *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (reversing a district court in part because the district court based its decision on a conclusion that the plaintiff's serial litigant status undermined the plaintiff's credibility), *with Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) (concluding that plaintiff's professed intent to return lacks credibility in light of his serial litigant status). On the facts before the Court, however, it is unnecessary for the Court to wade into this debate because plaintiffs have pleaded Smith's intention to return, meaning it is unimportant to this case whether serial litigants on the whole, as a general matter, are likely to return.

### 2. DSA's Standing

A party does not typically have standing to assert another party's interests, but one exception to this general rule is "associational standing." An association has standing to assert the interests of one of its members if (1) at least one member of the association has standing, (2) the interests implicated in the case are germane to the association's interests, and (3) the participation of the association's individual members is not necessary for the association to litigate the claim. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Because the Court finds that Smith has standing, as discussed above, and because Smith is a member of DSA, the first prong of the associational standing test is met. On the second prong, Billman admits that DSA's mission is "eliminating discrimination on the basis of disability," but he nonetheless argues that because plaintiffs did not plead facts as to how those organizational purposes are served by the present action, the second prong is not satisfied. The Court finds this argument unpersuasive. A civil action to enforce a section of the Americans with Disabilities Act entitled "Prohibition of discrimination by public accommodations" is plainly germane to the mission of an organization that exists to prevent discrimination on the basis of disability. DSA therefore satisfies the second prong. Finally, on the third prong, nothing indicates that this case requires the presence of any particular and specific DSA members.[6]

---

[6] Even if Smith's presence were necessary, it is not fatal to an association's claim of associational standing for a claim to require participation by some members, *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991), and associational standing can exist

(Footnote continued on next page.)

The Court therefore finds that DSA has pleaded sufficient facts to survive Billman's motion to dismiss on standing grounds.

## C.    Count III

Finally, Billman argues that even if plaintiffs' complaint cannot be dismissed outright on service or standing grounds, Count III nonetheless must be dismissed for failure to state a claim.  Count III alleges that  Billman's alleged violation of the MHRA constitutes a "bias offense" entitling plaintiffs to statutory or actual damages, whichever is greater, under Minn. Stat. § 611A.79.  The statute defines "bias offense":

> For purposes of this section, "bias offense" means conduct that would constitute a crime and was committed **because of** the victim's or another's actual or perceived race, color, religion, sex, sexual orientation, disability as defined in section 363A.03, age, or national origin.

*Id.* subdiv. 1 (emphasis added).  Thus, a person commits a disability-related bias offense only if he (1) commits a crime, **and** (2) commits that crime "because of" the victim's disability.[7]  *See Seivers v. City of Minneapolis*, No. 09-816, 2011 WL 284486, at *5 (D. Minn. Jan. 25, 2011) (declining to find a bias offense because "there is no evidence to show that the officers acted 'because of' Seivers's race").

---

(Footnote continued.)

even where litigation would "likely require that [individual members] provide discovery and trial testimony."  *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 601-02 (7th Cir. 1993).

[7] If Billman violated Minn. Stat. § 363A.11, as plaintiffs allege, he would be guilty of a misdemeanor.  Minn. Stat. 363A.30.  A misdemeanor is a "crime" under Minnesota law.  Minn. Stat. § 609.02 subdiv. 3.

Here, plaintiffs have pleaded no facts suggesting that Billman's alleged conduct in violation of the ADA and the MHRA was committed **because of** Smith's disability. The "because of" language in the statute requires plaintiffs to prove at least something about the defendant's state of mind at the time he committed the act in question. *See United States v. Hatch*, 722 F.3d 1193, 1206 (10th Cir. 2013) (interpreting "because of" language in the federal Hate Crimes Act to require that the prosecution prove the defendant's "state of mind"). Plaintiffs have simply not done so here.

Plaintiffs argue that § 611A.79's use of "because of" imposes nothing more than bare but-for causation, and thus a violation of any ADA or MHRA provision is necessarily conduct committed "because of" the victim's disability. The Court does not accept plaintiffs' argument but will summarize and review it. First, plaintiffs note that the federal ADA's prohibition of discrimination "on the basis of disability," 42 U.S.C. § 12182(a), is analogous to the MHRA's prohibition of discrimination "because of . . . disability," Minn. Stat. § 363A.11, subdiv. 1, and that a string of Eighth Circuit cases state that the two statutes are "parallel[]" and "co-extensive," *see, e.g.*, *Fenny v. Dakota Minn. & E. R.R. Co.*, 327 F.3d 707, 711 n.5 (8th Cir. 2003). Next, plaintiffs cite cases with broad statements that "[i]t is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA," *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 846-47 (9th Cir. 2004), to conclude that the "because of" and "on the basis of" language in the ADA and MHRA do not create intentionality elements and thus neither should the "because of" language in § 611A.79.

The largest flaw in this argument is that § 611A.79 is not in the MHRA at all, but is instead located 248 sections away, near the criminal code in a chapter titled, "Crime Victims: Rights, Programs, Agencies." Section 611A.79 is its own statutory section and its language must be read in its own context, not in the context of the ADA or the MHRA. And in the context of the criminal code, plaintiffs' interpretation of § 611.79 – offering strict-liability damages for the commission of crimes – makes little sense because almost all crimes require proof of *mens rea*. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978) (imposing a clear statement rule in favor of a *mens rea* requirement for statutory crimes that do not explicitly include a *mens rea* element). The better interpretation requires a plaintiff to plead at least something about the defendant's state of mind, especially since § 611A.79 appears to be most analogous to the federal Hate Crimes Act, which contains the same "because of" language and is universally understood to require proof of the defendant's state of mind. *Hatch*, 722 F.3d at 1206.

The Court acknowledges that proof of state of mind is not always required where a statute uses "because of" language, *see, e.g.*, *Tex. Dep't of Hous. and Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2519 (2015), but in this context, where the statute is best analogized to the federal Hate Crimes Act, and where plaintiffs have pleaded no facts as to Billman's state of mind, plaintiffs have failed to state a claim under Minn. Stat. § 611A.79.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 6] is **GRANTED in part** and **DENIED in part** as follows:

1.  The motion is **GRANTED** as to Count III.  Count III is **DISMISSED with prejudice**.

2.  The motion is **DENIED** as to Counts I and II.

DATED: February 25, 2016            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                               Chief Judge
                                       United States District Court